IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY L. CLOPTON,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 08-cv-1525-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF SHERRY L. CLOPTON |

**BACKGROUND**

Plaintiff Sherry L. Clopton ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act")

**FACTS AND PRIOR PROCEEDINGS**[1]

On August 27, 2003, Plaintiff filed an application for SSI benefits under Title XVI of the Act.[2] AR at 550-53. Plaintiff alleged that she had been under a disability since May 18, 2005, due to disabling physical problems. Id. After the Agency denied her request for benefits, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On June 12, 2006, the ALJ issued

---

[1] References to the Administrative Record will be designated as "AR" followed by the appropriate page number.

[2] Plaintiff also filed for DIB benefits under Title II but apparently that application is not part of the record. (Doc. 25 at 1, n. 1).

1

a decision also denying benefits. Id. at 556-72. Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Id. at 569. On December 1, 2006, the Appeals Council remanded the case back to the ALJ for further proceedings. Id. at 575. Specifically, the Appeals Council determined that the ALJ failed to make an adequate evaluation of certain examining source opinions, both physical and mental, and did not adequately analyze her symptom testimony. Id. at 575-76.

On remand, a new hearing was held before a different ALJ. AR at 845-74. On May 16, 2007, the new ALJ issued a decision again denying Plaintiff's application for benefits. Id. at 660. Again, the Appeals Council found problems with the ALJ's decisions and remanded the matter for further proceedings. Id. at 663. The Appeals Council determined that the ALJ failed to evaluate opinions of certain examining and treating sources. Id. at 664. The Appeals Council also directed the ALJ to "further evaluate" Plaintiff's subjective complaints and provide a rationale that was in accordance with Agency guidelines. Id. at 665.

Once again, the ALJ held a hearing on April 29, 2008. AR at 875-93. On May 30, 2008, the ALJ issued an opinion again denying Plaintiff's application for benefits. Id. at 27. The Appeals Council affirmed this decision. Id. at 12.

Hearing Testimony

Plaintiff testified at both hearings held on April 16, 2007 and April 29, 2008. AR at 845, 878. She was represented by counsel at both hearings as well. Id.

Plaintiff testified was 42 years old at the time of the 2007 hearing. AR at 849. She reported that she lived with her husband, who was employed as a shop manager with a trucking firm, and her daughter, who was 19-years old. Id. at 864, 867.

Plaintiff reported that she had an eighth grade education but no formal job training. Id. Plaintiff testified that she last worked as a janitor in 2004. AR at 850. She performed this job for only 7 or 8 days before stopping because she felt that it was too physically demanding. Id. at 850-51. Before this job, she worked at the deli counter at Albertson's grocery store. Id. at 851. She stopped working that job after a couple of weeks because she felt that it also was too physically demanding. Id. In addition, she testified that she had trouble getting along with co-workers. Id.

Before working at the grocery store, Plaintiff worked for a little less than one year as a meal server at a retirement home. AR at 852. That job ended because she was terminated. Id. Before this, she worked for about 2 months as a film processor at Wal-Mart. Id. at 853. She was fired from Wal-Mart because she missed too much work. Id.

Plaintiff testified that she suffered from anxiety which made it difficult for her to work around other people. Id. She reported that she couldn't work because of anxiety. AR at 854. Plaintiff testified that she could not leave home without taking medication and that she took Prozac and Xanax at that time. Id. at 854, 856, 884. She stated that she had suffered from depression all of her life but that it had worsened over time. Id. at 883. She reported also that she was prone to panic attacks when she left her home. Id. at 855. In particular, she testified that she suffered panic attacks when driving across intersections. Id. She estimated at the 2008 hearing she has about three-to-four panic attacks a week. Id. at 887.

Plaintiff testified that she had great difficulty being in public due to her depression/anxiety. AR at 866. She said that she had this problem for 15 years. Id. At the time of her 2007 hearing, she reported that she had not been treated for her mental health problems since 2005 because she had no insurance. Id. However, she testified that she continued to take Prozac and Xanax that were prescribed for her by her treating physician, Dr. Tim Farrer. Id. at 867. Plaintiff testified that she resumed mental health treatments in 2007. AR at 866. Her treating psychiatrist was Dr. Sarojini Rajguru and she had been treated by Dr. William Josephs, Ph.D. in the past. Id. at 885.

In addition to her depression and anxiety, Plaintiff stated that she suffered back and pelvic pain. AR at 856. She testified that she believed that her back pain was degenerative. Id. She stated that she was not sure about the origin of her pelvic pain but believed that it may be due to endometriosis. Id. at 857. She reported also that she suffered from an extremely painful skin condition that flared up six-to-seven times a year. Id. She stated that each flare-up lasted about 10-14 days. Id. During flare-ups, Plaintiff testified that her skin swelled, became red and boils formed. Id. During this period she reported that it was difficult to wear clothing. Id. at 860.

Plaintiff testified that she took Vicodin for her back pain and in the past, she had taken antibiotics for her skin condition. Id. at 863. At the 2007 hearing, she reported that she no longer

took the antibiotics because their effectiveness had diminished over time. Id at 863. However at the 2008 hearing, she stated she was taking Doxycyline and several types of antibiotics for her skin condition. Id. She continues to take Vicodin for her back pain as well as Motrin. Id. She is also treated with physical therapy. Id. at 880. Plaintiff testified that her back pain and skin condition also prevented her from working. Id. at 880.

Plaintiff testified that her physical condition prevented her from sitting comfortably for more than 20 minutes at a time. AR at 860. She reported that she could stand comfortably for about ten minutes. Id. She could lift 20 pounds occasionally (about twice a day). Id. at 861. She testified also that she could lift about five pounds consistently throughout a day. Id. at 865. She stated that if she attempted to lift more than this her back gave out. Id. She estimated she could not stand for more than about one hour during the course of an eight-hour day. Id. at 864. She reported that she could not walk for more than about one-to-two aisles in a grocery store at a time. Id.

Plaintiff stated that she had difficulty sleeping every night. AR at 861. She testified that she felt tired when she woke up in the morning. Id. During a normal day, she reported that she lay around and watched television. Id. She performed housework occasionally and her 19-year old daughter helped. Id. at 862. She estimated that she did laundry about twice a week and vacuumed about once a month. Id. She reported that she was able to go grocery shopping about twice a week. Id. Despite her mental and physical problems, Plaintiff reported that she had a driver's license and drove a couple times a week, usually to the grocery store. AR at 888. Also, she drove to places like Wal-Mart and to doctor appointments. Id.

Plaintiff testified that she had substance abuse problems in the past. See AR at 863. However, she stated at the 2007 hearing she had not taken any drugs in the last 12-13 years and had not drunk alcohol in 2½ years. Id. She testified that she had a DUI in the 1990s and, as a result of this conviction, she lost her license but it had been restored after she completed court-ordered rehabilitation. Id.

A vocational expert testified at both the 2007 and 2008 hearings. At the 2007 hearing, the VE described Plaintiff's past work as that of a dining room attendant, hand packer, cashier checker, deli counter operator and counter clerk. AR at 870. He described the dining room attendant, hand

packer and deli counter jobs as medium exertion work and the cashier checker and counter clerk positions as light work. Id.

The ALJ posed two hypotheticals at the 2007 hearing. In the first, he described a person able to carry 50 pounds occasionally and 25 pounds frequently. AR at 871. The person could both stand and/or walk for 6 hours in an 8-hour and could also sit for 6 hours in a day. Id. In addition, the person could perform simple, repetitive tasks, maintain concentration, attention, pace and persistence and could interact with others and adapt to ususal workplace changes and adhere to safety rules. Id. Under this hypothetical, the VE stated the person could not do Plaintiff's past relevant work but could perform other work such as a seed cutter, root harvest worker or tree trimmer. Id. at 871-72.

In the second hypothetical, the ALJ described a person who had a combination of severe impairments, could stand for one hour maximum during an 8-hour day, walk one-to-two aisles of a store at a time, sit for up to one hour and who had difficulty performing simple, repetitive tasks and had difficulty maintaining attention, concentration, pace and persistence. Id. at 872. With these restrictions, the VE opined that such a person could perform no work of any kind. Id. at 873.

At the 2008 hearing, the VE described Plaintiff's past relevant work as server position, packager, cashier and cleaner. AR at 889. He described each job as involving light exertion work. Id. Again, the ALJ posed hypotheticals to the VE. The first hypothetical was essentially identical to the first hypothetical propounded at the 2007 hearing. AR at 889-90. The VE stated that such a person retained the ability to perform at least one of Plaintiff's past jobs, namely, cleaner. Id. at 890.

The second hypothetical was the same as the first except that such a person could carry less than 5 pounds, walk/sit/stand for a total of less than hours in an eight-hour day and have to alternate between sitting and standing every 15 minutes. See AR at 891. The VE opined that a person with such restrictions could perform no work of any kind. Id.

Plaintiff's attorney asked the VE if, under the parameters of the first hypothetical a person had unscheduled absences 3-4 times a year for up to a week, she could still perform either her past relevant work or other work. AR at 892. The VE stated that such a restriction would prevent the person from performing any work. Id.

Medical Testimony

Relevant medical records show that in January 2004, Plaintiff was examined by a psychologist, Kimball Hawkins, Ph.D. In his report, Dr. Hawkins described Plaintiff as adequately dressed and groomed, and oriented to time place and person with no sign of hallucinations. AR at 418. He noted significant depressive symptoms such as the fact that Plaintiff cried frequently, had a depressed and anxious mood, felt talked about and disliked by others, and because she stated that she thought that she might be better off dead. Id.

Dr. Hawkins diagnosed major depressive disorder, panic disorder with agoraphobia and recommended continuing psychological treatment, including counseling. AR at 419. He opined that her ability to understand, remember and carry out simple instructions was unlimited but that her ability to carry out complex instructions was fair. Id. He also stated that her ability to maintain concentration, attention and persistence was fair while at home but problematical outside the home. Id. Her ability to perform activities within a schedule and maintain regular attendance was poor due to her depression, agoraphobia and panic symptoms and her ability to perform work a normal day without interruptions was poor also due to these impairments. Id.

Plaintiff was examined by Dr. Sarapinder Bhangoo in January 2004, for her physical ailments. Dr. Bhangoo noted chronic back pain, a skin condition and kidney surgery as a child. AR at 413. Nevertheless he noted that Plaintiff was alert and cooperative, moved around without difficulty, was able to perform tiptoe to heel walking normally and had normal coordination and reflexes. Id. at 414. He noted that she had no muscle spasms, atrophy or joint deformities and described abscesses that formed from her skin condition as it healed. Id. at 415. He described no limitations resulting from the abscesses. Id.

Dr. Bhangoo found no evidence of severe pain but found a normal range of motion in Plaintiff's lower back. He opined that Plaintiff could stand/walk for eight hours in an eight-hour day, sit for eight hours and carry 50 pounds occasionally and 25 pounds frequently with no postural or manipulative limitations. AR at 416. He found no workplace communicative limitations. Id.

A non-examining consultant assessed Plaintiff's Residual Functional Capacity ("RFC") in March, 2004. The assessment revealed that Plaintiff had back pain and skin boils but found that she could carry 50 pounds occasionally and 25 pounds frequently and that she could sit/stand/walk each

for six hours in an eight-hour day, with no postural, manipulative or environmental restrictions. AR at 457-58. Although the assessment stated that Plaintiff's symptoms related to a medically determinable impairment, the report found also that Plaintiff's claims were not supported by the minimal findings concerning her impairments. See id. at 462.

Psychology intern, Ryan Houston prepared a report that was endorsed by psychologist Ross Kremsdorf, Ph.D., J.D. regarding Plaintiff's mental condition. This November 2005 report, noted a diagnosis of panic disorder with agoraphobia, dysthymic disorder and panic disorder. AR at 540. Houston evaluated Plaintiff's Global Assessment of Functioning ("GAF") as 55.[3] Id. The report described Plaintiff as suffering a high degree of emotional distress, however the author opined that "[i]t is possible she is exaggerating some symptoms in a cry for help, but it seems she is not exaggerating symptoms in an attempt to obtain secondary gain." Id.

Dr. Tim Farrer provided a RFC Questionnaire in December 13, 2005. Dr. Farrer described himself as Plaintiff's treating physician at the time. He diagnosed Plaintiff's skin condition as hidradenitis suppurativa.[4] AR at 543. He noted that her last flare-up was in June 2005. Id. at 544. He described the lesions resulting from this condition as one-to-two centimeters long with scarring, fibrosis and sinus tract formation. Id. He prescribed treatment with antibiotics and stated that the condition would be expected to last at least 12 months, although he described the prognosis as good/fair. Id. at 545.

Dr. Farrer opined that Plaintiff's emotional problems, in particular her depression and anxiety, exacerbated her skin condition. AR at 546. He opined that Plaintiff's pain and symptoms frequently interfered with her attention and concentration levels that were necessary to perform work tasks and stated that Plaintiff was incapable of performing even "low stress" work. Id. He described Plaintiff as being unable to walk one block without rest or pain and opined she could sit for only 15 minutes at a time, stand for zero minutes and that she could sit/stand/walk combined for less than

---

[3] As noted by Defendant, a GAF in the 51-60 range denotes moderate psychologically based symptoms, including panic attacks, or moderate difficulty in social, occupational or school functioning, including having few friends or conflicts with peers or co-workers. (Doc. 25 at 3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Impairments, 4th text revision, 2000, p. 34 (DSM-IV-TR)).

[4] Plaintiff also testified that Dr. Farrer was her treating physician. AR at 867.

7

two hours in an eight-hour day. Id. at 547. Further, he stated that she needed unscheduled breaks during the day to elevate her legs for about 20 minutes at a time. Id. She could lift 10 pounds on rare occasions but never more than that. Id. She could not twist, stoop, crouch or climb ladders and had significant limitations with reaching, handling and fingering. Id. at 548.

Examining psychologist, William Josephs, Ph.D., completed a questionnaire and report in February 2007, that evaluated Plaintiff's mental RFC. Dr. Josephs noted that Plaintiff had a normal gait and appearance but he noted also that she had an erratic narrative style, a constantly tense and volatile demeanor and tearfulness. AR at 604. Dr. Josephs stated that Plaintiff was able to care for herself and shop in uncrowded stores but noted that her agoraphobia made it difficult for her to function in open spaces if it were more crowded. Id. at 606. Dr. Josephs noted that Plaintiff's panic attacks prevented her from using public transportation. Id. Also, Dr. Josephs opined that Plaintiff's anxiety and social discomfort were the primary factors for inability to function in crowds and her depression was a secondary factor. Id.

Dr. Joseph noted that Plaintiff's social functioning ability involved interaction mostly her family and that she avoided others "at all costs." AR at 607. He reported that she interacted with others with difficulty and this was demonstrated by her last job, wherein she showed animosity when asked to do certain tasks. Id. Dr. Joseph diagnosed generalized anxiety, panic disorder and a borderline personality disorder. Also he detailed symptoms such as poor memory, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, feelings of guilt and worthlessness, social withdrawal and isolation, decreased energy, irrational persistent fears, and hostility and irritability. Id. at 609. Dr. Joseph noted that she was currently prescribed Prozac and Xanax for her depression/anxiety. Id. at 608.

Dr. Joseph described the restrictions on Plaintiff's daily living as moderate, her ability to maintain social relationships as "marked," and that she was "often" deficient with concentration, persistence and pace. AR at 610. Dr. Joseph found her ability to remember locations and work procedures, or remember short, simple and repetitive tasks to be only minimally impaired. Id. at 611-12. He found her ability to remember detailed, non-repetitive instructions and maintain attention and concentration for at least two hours in a workday to be moderately impaired. Id. He

found her ability to work with others and her ability to complete a normal workday and workweek to be moderately, severely impaired. Id. at 611. He also found her ability to interact appropriately with coworkers and the general public to be moderately severely to severely impaired. Id. at 612. Finally, he indicated the stresses of work would likely exacerbate her impairments. See id.

Dr. Sanjorini Rajguru provided a June 26, 2007 report and in it he described himself as Plaintiff's treating psychiatrist. He diagnosed Plaintiff with moderate depressive disorder, chronic and recurrent with anxiety and panic disorder. AR at 717. He opined that her anxiety made it difficult for her to concentrate but he described her sleep habits and appetite as normal. Id. at 716. Dr. Rajguru noted that Plaintiff had a GAF score in the 61-70 range and characterized her symptoms as "mild" with "some" difficulty in social, occupational or school functioning. However, he found that she has the ability for some meaningful social relationships and was "[g]enerally functioning pretty well." Id. at 717. Dr. Rajguru also noted she behaved in a normal, appropriate manner, had normal motor activity, a normal range of affect, coherent, relevant and logical thought processes, good insight and judgment and no suicidal ideation. Id. Monthly follow-up examinations from July-December 2007 and in March 2008, reveal little change in his assessment of her mental condition. Id. at 751, 756, 823, 828, 831, 833.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since her claimed onset date of December 13, 2005. AR at 23. Second, he found that Plaintiff had severe impairments consisting of spondylosis and depression. Id. However, in the third step of his evaluation, the ALJ determined that these impairments, or a combination of these impairments, did not meet or exceed the level required under Agency guidelines for presumed disability. Id.

In the fourth step of his analysis, the ALJ determined that Plaintiff has the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, sit, stand and/or walk six hours each in an eight-hour workday; perform simple repetitive tasks, maintain attention, persistence, and pace; relate to and interact with others; adapt to usual changes in work settings; and adhere to safety rules. AR at

26. Based on the RFC and citing the testimony of the VE, the ALJ concluded that Plaintiff was not precluded from performing her past relevant work as a cleaner (Step 4). Id. Alternatively, the ALJ concluded that Plaintiff retained the RFC to perform other work in the national economy (Step 5). Id. As a result, the ALJ determined that Plaintiff was not disabled as defined by the Act. Id. at 27.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[5] As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has a medically determinable and severe physical impairment (degenerative arthritis of the lumbar spine); (3) does not have an impairment which meets or is equal to one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could perform her past work as a cleaner; and (5) retains the RFC to perform other work related activities. AR at 23-26. The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 27.

Plaintiff challenges the ALJ's determination at Steps 4 and 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on her RFC. In particular, she alleges the ALJ failed to properly assess the opinions of "treating" doctors, Ross Kremsdorf, Ph.D. and Tim Farrer, M.D.

## DISCUSSION

Plaintiff raises only one claim on appeal. She contends that the ALJ failed to credit, or even address the opinions of two "treating" doctors, Farrer and Kremsdorf, and that if their opinions are credited, she is entitled to a finding that she is disabled. (See Doc. 20 at 5, 6-7, 9).

A. The ALJ Provided Specific and Legitimate Reasons for Discounting the Opinions of Dr. Farrer

In his 2005 RFC assessment questionnaire, Dr. Farrer discussed Plaintiff's skin condition, hidradenitis suppurativa, in detail. He opined that this condition, as well as her mental impairments, in particular, depression and anxiety, caused symptoms which made it difficult for her to muster the attention and concentration to perform even "low-stress" work. AR at 544. Citing her skin condition, he identified symptoms, including increased sensitivity to touch, restricted mobility, impaired sleep and fatigue, which prevented her from walking even one block without rest, and noted extreme limits on her ability to either sit, stand or walk, without taking significant breaks to lie

---

[5] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

down over the course of a workday. See id. at 545-48. He also opined that this condition would require her to be absent for at least 4 work days each month. Id. at 548. Hypotheticals put to the VE at both the 2007 and 2008 hearings containing these types of restrictions resulted in a conclusion that Plaintiff could do no work of any kind. See id. at 872-73, 891-92.

The opinions of treating doctors are given more weight than the opinions of non-treating doctors. If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Even if contradicted by another doctor, the Commissioner may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

Although the ALJ did not discuss Dr. Farrer's opinion in his 2008 decision, the record reveals that his opinions were discussed in both the 2006 and 2007 decisions of the ALJ. Both of those decisions were remanded by the Appeals Council but for reasons unrelated to their treatment of Dr. Farrer's findings. Thus the record does address Dr. Farrer's conclusions. For instance, the ALJ's 2006 decision explicitly discounted Dr. Farrer's findings, stating, *inter alia*:

> I give very little weight to Dr. [Farrer's] assessments. Aside from being dishonest about the extent of his opportunity to observe the claimant, his evaluation is exaggerated to the point of absurdity. For example, it states that the claimant can sit only 15 minutes at a time. Actually, the claimant sat in apparent comfort through a hearing lasting two hours. According to Dr. [Farrer], the claimant can stand "zero" minutes, and can "never" stoop or bend and can sit, stand and walk in combination for less than two hours per day. Actually, she is the single mother of a minor child. The claimant testified that she drives regularly, cooks two to three times per week, does the laundry; and tends to all her own personal needs including bathing and dressing. She further testified that in October 2005, at the very time Dr. [Farrer] say she was unable to sit for more than 15 minute[s] and so on, she flew to Indiana and back to visit an old boyfriend. The claimant further testified that in late 2004, in addition to running her own household, she drove to her father's home five days per week where she cooked, groomed and fed him for about two-to-three hours per day. Finally, Dr. [Farrer's] opinion that the claimant cannot tolerate even low stress is not only unsupported by mental status examination but is outside his area of medical specialization (family medicine) and plainly contradicted by the claimant's daily activities which, as she testified, include regular highway driving as recently as the day before the hearing.

AR at 561-62.[6]

In the ALJ's 2007 decision, he reiterated that there was nothing in the record to support Dr. Farrer's findings, noting that in regard to her skin condition "few of the earlier medical records, and none of the more recent clinical notes, note this condition in more than a passing manner." AR at 656.

As a threshold matter, the ALJ questioned Dr. Farrer's veracity as to his statement that he saw Plaintiff every month. AR at 543, 561. The ALJ noted that Dr. Farrer had only seen Plaintiff three times (in September, November and December of 2005) at the time he made his December, 2005 RFC assessment. The Court is less troubled by this, noting that this only reveals that Dr. Farrer had treated Plaintiff for a relatively short period of time and is not necessarily indicative of dishonesty. Moreover, in later testimony, Plaintiff specifically identified Dr. Farrer as her treating doctor, noting that he continued to prescribe Prozac and Xanax for her depression during the period between 2005 and 2007 when she did not seek treatment from a mental health specialist. See id. at 867. Even if Dr. Farrer is classified as an examining rather than treating physician, the ALJ is still required to provide "clear and convincing" reasons for discounting the uncontroverted opinion of an examining physician and "specific and legitimate" reasons supported by substantial evidence in the record for discounting such an opinion if contradicted by another doctor. Lester, 81 F.3d at 830-31.

Other reasons cited by the ALJ are sufficient to discount Dr. Farrer's opinion. As noted by the ALJ in great detail in the 2006 decision, Plaintiff's own testimony contradicts the scale of Dr. Farrer's extremely restrictive findings. AR at 561-62. In addition to her testimony at the 2006 hearing, testimony provided by Plaintiff at both the 2007 and 2008 hearings reveals she continued to do light housework, shopping and driving, all inconsistent with the level of disability cited by Dr. Farrer. See AR at 861, 888. When considered in total, the ALJ in both the 2006 and 2007 decisions, provided specific and legitimate reasons for discounting Dr. Farrer's conclusions.

---

[6] Transcripts of the 2006 hearing are not in the record.

In addition, substantial evidence cited by the ALJ supports a finding of not disabled.[7] Dr. Rajguru, who Plaintiff identified as her "treating" psychiatrist, determined that her GAF score was in the 61-70 range which indicated a higher level of functioning. AR at 717. In fact, Dr. Rajguru noted, based on this GAF score, that Plaintiff generally functions pretty well and described her symptoms as "mild." Id. Numerous follow-up examinations by Dr. Rajguru in the latter half of 2007 and in March 2008, reveal essentially no change in his assessment of her mental condition. See id. at 751, 756, 823, 828, 831 and 833. This was consistent with a March 2004 RFC assessment of Plaintiff's mental condition by non-examining consultant, Dr. Anne Khong. Dr. Khong found that while Plaintiff was "moderately limited" in carrying out detailed instructions and interacting appropriately with the general public, she retained the ability to understand and remember simple instructions, carry out short instructions, perform activities with directions without additional support, maintain attention in two-hour increments and respond to changes in work setting. Id. at 438-40. Also, as noted by the ALJ in his 2007 decision, Dr. Bhangoo concluded that Plaintiff's physical condition, including her spondylosis and "chronic boils" did not prevent her from lifting 50 pounds occasionally and 25 pounds frequently, or prevent her from sitting, standing and/or walking without limit in an eight-hour day. Id. at 416.

B. Plaintiff's Allegation that the ALJ Failed to Consider or Credit Dr. Kremsdorf's Opinion is Without Merit

Plaintiff also contends that the ALJ failed to consider the findings of psychologist Dr. Kremsdorf. In a November 2005, report filed by a psychology intern and endorsed by Dr. Kremsdorf, Plaintiff was diagnosed with several mental impairments, including panic disorder and agoraphobia, as well as depression and dysthymic disorder. AR at 540. The report also noted Plaintiff had a GAF score of 55, which indicated a moderate degree of symptoms, including panic attacks and moderate difficulty in social, occupational and school functioning such as having few friends or conflicts with peers and coworkers. See id. at 539, 540. The report described Plaintiff as

---

[7] Plaintiff does not challenge the ALJ's conclusion that her symptom testimony was "not entirely credible." AR at 25. As a result, the Court has not addressed this issue on appeal. See Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (holding that when an issue is not raised before the district court, it has been waived on appeal to this court).

suffering "a severe depression" with a "high degree of anxiety" and no indication of malingering although the author opined that "[i]t is possible that she is exaggerating some symptoms as a cry for help, but it seems as though she is not exaggerating symptoms in an attempt to obtain secondary gain." Id. The report recommended "short term, solution-focused therapy" and proffered no opinion on Plaintiff's ability to function in the work place. Id. at 540.

Although the ALJ also did not directly address Dr. Kremsdorf's findings in the 2008 decision, the 2006 decision did address his report. The ALJ stated at that time that the report was not inconsistent with a finding that Plaintiff retained the RFC to perform work, noting that it recommended only "short-term, solution focused therapy for the treatment of depression and anxiety, which is clearly inconsistent with a finding that they believed she had any severe or disabling mental impairment." AR at 562.

Upon review, the Court concludes that Dr. Kremsdorf's report is not inconsistent with the ALJ's conclusion that Plaintiff's mental impairments did not preclude either her past relevant work or other work. As noted the report recommends only "short-term, solution focused therapy" and offers no opinion on Plaintiff's ability to perform work-related activity. Other than cite Dr. Kremsdorf's report, Plaintiff fails to explain with any specificity how the report supports a finding of that she is disabled. Without more, such vague and conclusory assertions are insufficient to overturn the ALJ's findings.[8] See Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("Beyond its bold assertion, [Plaintiff] provides little if any analysis to assist the court in evaluating its legal challenge"); Hibbs v. Department of Human Resources, 273 F.3d 844, 873 n. 34 (9th Cir. 2001) (finding argument too undeveloped to be capable of assessment).

Finally, Plaintiff contends that the ALJ's failure to assess her mental impairments using a "supplemental five-step sequential evaluation process" constituted reversible error. (Doc. 20 at 6-7). In particular, she argues that having determined Plaintiff suffered from a "severe" mental impairment, namely depressive disorder, at Step 2, the ALJ was required to assess how this disorder

---

[8] In addition, as noted by Defendant, the record indicates that Dr. Kremsdorf's opinion is based on just one examination and that was performed by an intern. See AR at 537-40. Thus, any assertion by Plaintiff that Dr. Kremsdorf is her "treating" psychologist, or even an examining one, is an exaggeration.

15

effected her ability to function in four broad areas, namely, daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (Id.); see 20 C.F.R. § 416.920a(c)(3).

The Court disagrees that the ALJ failed to consider Plaintiff's mental impairments in making his RFC finding. A fair review of the record reveals that the ALJ did substantially address these issues in making his RFC assessment. For instance, he specifically determined that Plaintiff retained the ability to perform simple repetitive tasks, maintain attention, persistence and pace, and relate and interact with others. AR at 26. As already discussed, the ALJ cited specific evidence in the record from treating, examining and consulting medical experts to support these conclusions. As a result, the Court concludes that the ALJ essentially complied with these requirements in making his RFC assessment and concluding that Plaintiff was not disabled.

## **CONCLUSION**

For these reasons, the Court concludes that the ALJ has provided legitimate and specific reasons for discounting the opinion of Dr. Farrer. Plaintiff has not established that the report of Dr. Kremsdorf is inconsistent with the ALJ's conclusion that Plaintiff retained the RFC to perform her past work or, alternatively, other work and her vague assertion to the contrary is insufficient to warrant remand. In addition, the ALJ cited substantial evidence in the record to support his conclusion that Plaintiff could perform such work and was not disabled.

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Sherry L. Clopton.

IT IS SO ORDERED.

Dated: **February 24, 2010**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE